# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JOHNNY WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 5:07-CV-1914-VEH** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Johnny Williams (hereinafter "Williams") brings this action pursuant to 42 U.S.C. §§ 405(g), 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied his application for Disability and Disability Insurance Benefits ("DIB"). Williams timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to § 205(g) of the Social Security Act. 42 U.S.C. § 405(g). As discussed below, the court concludes that the decision of the Commissioner is due to be reversed and the case remanded.

## FACTUAL AND PROCEDURAL HISTORY

Williams is a male claimant and was 50-years-old at the time of his hearing on

April 24, 2007. (Tr. 214-215). His past relevant work experience includes serving as a maintenance mechanic in a sheet metal shop. (Tr. 66). Williams claims he has been unable to work since October 27, 2005, the date he protectively filed an application for disability benefits. (Tr. 37). He states he is disabled because of cervical back problems and hypertension. (Tr. 216). Williams maintains that he is not able to sit for long periods of time because "it bothers [him]" and his legs go to sleep after 15-20 minutes. (Tr. 220); (Tr. 222). He explains that he is unable to walk half a block without having to sit down "two or three times" because he loses breath, and he "get[s] so weak" to the point that he can no longer walk. (Tr. 220). Williams reports he can perform certain minimal daily activities. (Tr. 221-26).

Williams's application for benefits was denied by the Commissioner on January 4, 2006. (Tr. 25). He subsequently requested a hearing before the Administrative Law Judge (hereinafter referred to as "ALJ") on January 23, 2006. (Tr. 30).

On April 24, 2007, a hearing was conducted before ALJ Randall C. Stout. (Tr. 13). The ALJ denied Williams's claim for benefits in his opinion, dated June 22, 2007. (Tr. 20). The Appeals Council denied Williams's request for review on August 20, 2007. (Tr. 5). Williams filed a Complaint on October 19, 2007, in which he asked this court to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

(Doc. 1). On October 23, 2007, the court denied Williams's request to proceed in forma pauperis. (Doc. 5).

Williams maintains that the ALJ's decision is not supported by substantial evidence, and the ALJ followed improper legal standards because (1) the ALJ did not afford appropriate weight to the opinion of Williams's treating physician, Dr. Pickett (Pl. Br. at 7); and (2) he improperly applied the pain standard when determining negative credibility in regard to Williams's subjective pain testimony. (*Id.* at 5).

## **STANDARD OF REVIEW**

The function of this court is to determine whether the decision of the ALJ is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. The court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the Secretary;

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of March 27, 2008.

4

    (4)    whether the claimant can perform his past work; and
    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, he will automatically be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform his work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

Using the above five-step process for disability determination, the ALJ concluded Williams is not disabled and therefore not entitled to the requested disability benefits. Below is a summary of the ALJ's findings:

**(1) Employment**

The ALJ found that Williams has not engaged in substantial gainful activity at any time relevant to this decision and is not employed. (Tr. 15).

**(2)   Severe Impairment**

The ALJ found that Williams does have severe impairments pursuant to 20 C.F.R. § 404.1520(c). *Id.* More specifically, those severe conditions are: (1) history of cervical surgery with residual pain and discomfort; (2) alcohol and tobacco abuse; (3) hypertension; and (4) hyperlipidemia. (Tr. 15-16).

**(3)   Severe Impairment within Regulations**

The ALJ found that Malone does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. § 404, Subpt. P, App.1. (Tr. 16). The ALJ noted, "[Williams] does not allege, nor does the record support a finding that his impairments satisfy the requirements of a listed impairment." *Id.*

**(4)   Past Relevant Work**

The ALJ found that Williams is unable to perform any past relevant work under 20 C.F.R. § 404.1565. (Tr. 18). Williams's past relevant work was as a maintenance mechanic-sheet metal worker, which, according to the vocational expert, is classified as heavy in exertional level. *Id.* The ALJ determined that Williams lacks the residual functional capacity ("RFC") to perform the requirements of his past relevant work. *Id.*

**(5)  Capability of Performing Work in the National Economy**

The ALJ found that Williams is capable of performing "less than a full range of light work" in the national economy. (Tr. 16-18).  This finding was determined by the medical evidence and other evidence under 20 C.F.R. § 404.1565 and SSRs 96-4p and 96-7p.[2]  *Id.*  The ALJ also used opinion evidence, as it is defined under 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  *Id.*

Furthermore, the ALJ used the three-part pain standard in forming this RFC conclusion and also evaluated the intensity, persistence and limiting effects of Williams's symptoms to determine the extent to which they limit his ability to do basic work activities.  *Id.*  In doing so, the ALJ made an adverse finding on the credibility of Williams's statements in regard to this intensity, persistence, or functionally limiting effects of pain or other symptoms not substantiated by objective medical evidence.  *Id.*

## FINDINGS AND HOLDINGS OF THE COURT

The court has carefully reviewed the record and finds that this case should be remanded.  Under the instant circumstances, the evidence in the record is not substantial to support the ALJ's conclusion that Williams is not disabled and can

---

[2] Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006), 2006 WL 177576 (citing SSR 96-6p as authoritative, for example).

perform less than light work because: (1) the ALJ did not adequately show good cause for discounting the opinion of Williams's treating physician, Dr. Pickett; and (2) the ALJ's negative credibility finding in regard to Williams's subjective pain testimony is not supported by substantial evidence.

Williams bears the ultimate burden of proving his disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). He must prove in step one that he is not working, *id.* which Williams established, and the ALJ confirmed. (Tr. 15). He must prove in step two that he has severe medical impairment(s), *Bowen*, 482 U.S. at 146 n.5, which his medical records establish, and the ALJ confirmed. (Tr. 15-16). At step three, the inquiry is whether Williams's impairments are listed in Appendix 1 of the Regulations. *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 404-P, App. 1).

The ALJ determined that Williams's impairments were not of the type listed in the Appendix. (Tr. 16). Williams does not dispute this finding. If, as here, a claimant does not suffer from a listed impairment, the process moves to step four, where the "inquiry is whether [a claimant], despite his severe impairment, has the residual functional capacity to perform his past work." *McDaniel*, 800 F.2d at 1030; *see* 20 C.F.R. § 416.965. The ALJ in the instant case concluded that Williams was not able to perform his past work. (Tr. 19). Finally, upon finding that Williams could not perform his past work, at step five, the burden shifted to the Commissioner to
8

prove there is other work in the national economy he can perform. *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 404-P, App. 1).

I.  **THE ALJ'S DECISION THAT WILLIAMS IS NOT DISABLED IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

   A.  **The ALJ did not adequately show good cause for discounting the opinion of Williams's treating physician, Dr. Pickett.**

Williams argues that the ALJ did not afford appropriate weight to his treating physician, Dr. Pickett. The court agrees. In his January 10, 2007, letter to another physician, Dr. Pickett writes, citing to Williams's <u>degenerative</u> condition, "I do not think [Williams] will ever be able to return back to <u>gainful employment</u>." (Tr. 178 (emphasis added)). In his notes from the same day, Dr. Pickett reports, "I feel [Williams] will never be able to return to <u>any type of gainful employment</u>, and he is already applying for <u>complete disability</u>, which I feel is appropriate." (Tr. 179 (emphasis added)).

The ALJ attempts to discount Dr. Pickett's January 2007 opinion by stating:

> Dr. Pickett makes comments regarding the fact that the claimant is disabled <u>but this is apparently referring to his prior work</u> and that his actual assessment of January 6, 2006,[3] indicated that, while he is restricted in his ability to perform work activities, he is capable of

---

[3]The court notes that while the ALJ makes reference to "January 6, 2006," in reviewing the record, it appears that he made a typographical error and means "January <u>9</u>, 2006," because no records exist from January 6.

9

performing a reduced range of light work.

(Tr. 18 (emphasis added)).[4]

The ALJ must give weight to the treating physician's opinion, but if he chooses not to do so, he must show good cause why he chooses to not do so. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The opinion of a treating physician as to the plaintiff's condition and the medical consequences thereof is entitled to deference, absent good cause. *Id.*; *see* 20 C.F.R. §§ 404.1527, 416.927 (1998).[5]

Here the ALJ does not show good cause in his treatment of the treating physician's testimony. More specifically, the ALJ's explanation that Dr. Pickett's January 2007 statements are "apparently referring to [Williams's] prior work" when Dr. Pickett uses terms such as "any type of gainful employment" and "completely disabled" in describing Williams's ability to work makes little or no sense, much less establishes good cause. (Tr. 18).

The Commissioner in his brief cites *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) and attempts to argue that the ALJ does have good cause to discount

---

[4]Dr. Pickett's opinion from 2006 states: "I feel that [Williams] will not be able to do heavy lifting of more than 15-20 lbs indefinitely and should never climb ladders or place himself in that situation since he is still somewhat myelopathic and could fall." (Tr. 185).

[5]Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Dr. Pickett's January 2007 opinion. (Comm. Br. 8-10). However, as explained *supra* at 9-10, the ALJ did not show, or even attempt to articulate, this alleged "good cause." Instead as Williams correctly maintains in his brief (Pl. Br. at 8), the ALJ adopts at best a questionable and at worst a nonsensical interpretation of Dr. Pickett's opinion from 2007, and avoids any formulation of a logical explanation for rejecting or otherwise giving little or no weight to the evidence. (Tr. 18). No binding authority cited by the Commissioner shows that it is the function of this forum, as the reviewing court, to step into the ALJ's role at this time and independently determine whether good cause for rejecting Dr. Pickett's 2007 opinion exists elsewhere in the record.[6]

Additionally, the court is troubled because, while the ALJ gives little or no weight to Dr. Pickett's January 2007 opinion, he relies considerably upon that same doctor's January <u>2006</u> findings.  *Id.*[7]  This court has noted before that, in

---

[6] As the Commissioner notes in his brief, Williams attempted to obtain a "completed [MSS] form from Dr. Pickett, describing [Williams's] work-related limitations..." (Comm. Br. at 3 n.9). However, Dr. Pickett declined, indicating that this was not his normal practice. (Tr. 209). The court does not reach the issue of whether this refusal by a treating physician or the absence of such a MSS can constitute "good cause" to discount Dr. Pickett's January 2007 opinion because the ALJ does not reference this omission in his decision.

[7] Directly preceding the ALJ's statement discussing Dr. Pickett's January <u>2007</u> opinion, he states, "As for the opinion evidence, consideration has been given to the opinion of Dr. Pickett in January <u>2006</u>." (Tr. 18 (emphasis added)). Additionally, immediately following the ALJ's statement which attempts to discount and/or reinterpret Dr. Pickett's January <u>2007</u> opinion regarding Williams's complete inability to work, the ALJ relies on Dr. Pickett's January <u>2006</u> findings to support his RFC conclusion. *Id.*

circumstances similar to those in the present case, an ALJ must be specific in showing good cause to use part of a treating physician's records but discount a more recent opinion in those records. *Stidham v. Astrue*, No. 6:07-CV-1921-VEH (N.D. Ala. June 30, 2008) (Doc. 11 at 12).[8] Such specificity would logically be particularly important in cases, such as this, in which the claimant undeniably has a "marked degenerative disease throughout the cervical spine." (Tr. 16; Tr. 178) (emphasis supplied). Accordingly, for the reasons stated above, the case is due to be remanded on this basis.

> **B.  Alternatively, the ALJ did not properly discredit Williams's subjective pain complaints.**

Williams argues he meets the Eleventh Circuit's pain standard, and the ALJ's

---

[8]In *Stidham*, the ALJ gave little weight to a treating physician's opinion but used "the physician's finding from the claimant's earlier visits." *Stidham*, No. 07-1921 (Doc. 11 at 12). This court noted that the ALJ's stated reason for giving little weight to a later portion of the physician's opinion "because he thought it was 'completed to assist the claimant in his quest to obtain Social Security disability benefits and it did not represent the claimant's medically determinable limitations and restrictions.'" *Id.* This court determined that the ALJ's reason for giving little weight to the particular later portion of the doctor's opinion did not qualify as "good cause" in light of the fact that the claimant in that case suffered from a degenerative condition, as the claimant does in the present case. *Id.* Also similar to *Stidham*, the ALJ determined in that case that the claimant, like Williams here, was unable to perform work such that the Commissioner was responsible for going forward with evidence to show that the claimant was not disabled. 20 C.F.R. § 404.1512(g); 20 C.F.R § 404.1560(c)(2) ("In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors.") (emphasis added).

contrary decision is not supported by substantial evidence. (P. Br. at 7). The court agrees with Williams.

The pain standard "applies when a disability claimant attempts to establish a disability through [her] own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires evidence of an underlying medical condition and (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). A claimant's statements about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Instead, medical signs and laboratory findings must depict medical impairments that could reasonably be expected to produce the alleged symptoms. *See id.*; *see also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551 (11th Cir. 1986)). Even if a claimant meets the pain standard, the ALJ may then evaluate the intensity, persistence, and limiting effects of the alleged symptoms, such as pain. *See* 20 C.F.R. § 404.1529(c)(1).

Applying this standard to the present case, the ALJ correctly finds that medical signs and laboratory findings depict medical impairments that could reasonably be expected to produce the alleged symptoms. (Tr. 17). However, the ALJ determines

"the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." *Id.*

The ALJ may reject a plaintiff's complaints of pain if he finds them not credible. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). However, if the ALJ discredits a claimant's testimony regarding the severity of her symptoms, that determination must be supported by substantial evidence, and the ALJ must "articulate explicit and adequate reasons" for such. *Id.*

Furthermore, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [a claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p. The ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). This "other evidence" includes statements made by the claimant in testimony during administrative hearings concerning the claimant's restrictions, daily activities, frequency and intensity of symptoms, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3) and 416.912(b)(3). Using these "other evidence" factors, the ALJ must show substantial evidence

14

supporting his attempt to discredit the claimant's pain testimony. *Id.*

Williams gave detailed testimony about his pain and related limitations. He reported that his pain "hurts all the time" and that it is "bearable sometimes and unbearable at times." (Tr. 219). He rated his pain as "around a 6 to 8" on a scale of zero to ten. *Id.* Williams testified that he is not able to sit for long periods of time because "it bothers [him]" and his legs go to sleep after 15-20 minutes. (Tr. 220) (Tr. 222). He maintained that he is unable to walk half a block without having to sit down "two or three times" because he loses breath, and he "get[s] so weak" to the point that he can no longer walk. (Tr. 220). He stated that he can stand without help for about 30-35 minutes and feels "a pulling" in his back if he attempts to pick up something the size and weight of a gallon of milk. *Id.* He reported he could not pick up something that size and carry it. *Id.* Williams testified that his hands and arms tingle and "go to sleep on [him]." (Tr. 222). He stated that numbness in his legs cause problems for him while walking, causing his legs to "buckle on [him]." (Tr. 222-23). He testified that he takes pain medication. (Tr. 223). He reported that the pain causes him concentration problems, and he has trouble retaining information from a two-hour movie and comprehending what he reads in the newspaper. *Id.* Williams said that he gets about 5-7 hours of "up and down" sleep on a good night and does not feel rested when he awakes. (Tr. 223-224).

Williams testified he can take care of some of his personal needs, such as showering and dressing himself, to a limited degree. However, he has a bar in his bathroom to provide support if he falls. (Tr. 224). He reported that he drives "very little" and does not go far when he does drive. *Id.* He said his wife usually drives. (Tr. 225). He testified that he is unable to do yard work, his wife and daughters cut the grass, *id.* and he is no longer able to participate in other hobbies such as woodworking and gardening. (Tr. 226). Williams further stated that he does not attend church or other social activities because he has trouble sitting for extended periods of time and no longer hunts or fishes. *Id.* He maintained that he can do "a little bit of housecleaning, and he "cook[s] a little bit, very little." *Id.* He reported he can help bring in groceries, "if it's light stuff." (Tr. 222).

Williams testified he quit drinking about a month before the hearing (Tr. 226) because his doctor told him it was bad for his blood pressure. (Tr. 228).

In attempting to discredit Williams's subjective pain complaints, the ALJ states:

> The claimant has admitted certain abilities which provide support for part of the [RFC] in this decision. At one point or another in the record (either in forms completed in connection with the application and appeal, in medical reports or records, or in the claimant's testimony), the claimant has reported the following daily activities: driving, taking care of personal needs, cooking, and light housecleaning. This does indicate that the claimant's daily activities have, at least at times, been somewhat

16

greater than the claimant has generally reported.

(Tr. 17-18).

The ALJ neither points to any specific evidence showing inconsistency in Williams's claims regarding daily activities, nor can the court independently find any such examples. Williams admits to the daily activities noted by the ALJ within the record, and where there are any differences, they are minimal and/or otherwise explainable. For example, although Williams admits to driving "very little" in his hearing testimony (Tr. 224), he indicates that he is unable to drive on a December 7, 2005 questionnaire. (Tr. 84). However, Williams further notes in the margin of this questionnaire that he is unable to drive "at this time" because he cannot swivel his neck properly to "check for traffic." *Id.*

Additionally, most of the daily activities he claims he is unable to perform in the questionnaire are limited because, as he clarifies on the questionnaire, his doctor told him not to lift anything over two pounds for awhile. (Tr. 80-85). Otherwise he admits to being able to conduct certain minimal daily activities within the record, but those statements do not contradict prior ones.

Additionally, the ability to perform minimal daily activities does not disqualify a claimant from being disabled. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir.

17

1997); *see also Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) (stating that "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity"). Williams's daily activities are minimal, considering the limitations and accommodations associated with them. For example, as stated above, he has a bar in his bathroom to provide support if he falls. (Tr. 224). He rarely drives. *Id.* He cannot sit for extended periods of time. (Tr. 220). None of these statements have been shown to be inconsistent in the record.

The ALJ also attempts to discredit Williams's subjective pain testimony by stating, "the credibility of the statement [by Williams that he had not drank alcohol in the past month and had stopped] remains questionable in view of his long history of drinking." (Tr. 18). As stated above, the ALJ may reject a plaintiff's complaints if he finds them not credible. *See Marbury*, 957 F.2d at 839; 20 C.F.R. § 404.1529(c)(1). However, if an ALJ discredits a claimant's testimony regarding the severity of his symptoms, he must "articulate explicit and adequate reasons" for so doing. *Foote*, 67 F.3d at 1561-62; *see also Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987) (articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence); S.S.R. 96-7p, found at 1996 WL 374186 (S.S.A. 1996).[9] In the present case, the ALJ makes a conclusory

---

[9] "It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It

18

statement that "in view of [the claimant's] long history of drinking," he questions Williams's credibility on this matter. The ALJ's generalized attempt to discredit Williams on the drinking question is not supported by substantial evidence. (Tr. 18).

The ALJ also attempts to discredit Williams based on the fact that his complaints are not substantiated by objective medical evidence. The ALJ "cannot reject the claimant's statements as to the intensity and persistence solely because they are not substantiated by objective medical evidence." 20 C.F.R. § 404.1529(c)(2). Given the inadequacy of the other reasons for discrediting Williams, the objective medical evidence alone is not sufficient to discredit him. Therefore, the ALJ has not adequately discredited Williams's subjective pain complaints, and this appeal is alternatively due to be remanded for this independent reason.

## **CONCLUSION**

In social security disability cases, the district court must review the ALJ's opinion and "determine whether its conclusion, as a whole, is supported by substantial evidence in the record." *Foote*, 67 F.3d at 1558 (citing 42 U.S.C. §

---

is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p, found at 1996 WL 374186 (S.S.A. 1996).

405(g)). Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner is reversed and the case remanded. 42 U.S.C. § 405(g).[10]

**DONE** and **ORDERED** this the 5th day of August, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[10]The fourth sentence of 42 U.S.C. § 405(g) states "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."